Vincent **FARINELLA,** Nanette Aragon, Daniel Schoppe, Jason Etten, George Cesar, Dennis Trubitsky, and Douglas Mashkow, individually and on behalf of others similarly situated, Plaintiffs,

v.

**PAYPAL, INC., and Ebay, Inc., Defendants.**

No. 05–CV–01720 (ILG)(VVP).

United States District Court, E.D. New York.

April 30, 2009.

Marina Trubitsky, Law Office of Marina Trubitsky, New York, NY, for Plaintiffs.

Dennis Trubitsky, pro se.

Angela Dunning, Benjamin F. Chapman, Laura C. Pierri, Lori R.E. Ploeger, Michael G. Rhodes, Cooley Godward, Kronish LLP, San Diego, CA, Celia Goldwag Barenholtz, David Mehretu, Cooley Godward Kronish LLP, New York, NY, for Defendants.

Elizabeth Pawlak, Alexandria, VA, for Interested Party.

### MEMORANDUM AND ORDER

GLASSER, Senior District Judge:

#### Introduction

Proposed class representatives filed a second amended class action complaint on December 20, 2006 (the "Complaint") against defendants eBay, Inc. ("eBay") and PayPal, Inc. ("PayPal" and together with eBay, the "defendants") and against Essex Technology Group, Inc., Peter Marcum, Robert Echols, and Eric Crawford (the "Essex Defendants").[1] The Complaint alleges, *inter alia,* that the defendants violated the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and 1962(d), engaged in deceptive trade practices and false advertising in

---

1. Claims against the Essex Defendants were voluntarily dismissed in September 2007.

violation of New York Gen. Bus. L. §§ 349 and 350, and are liable for fraudulent inducement, breach of contract and negligence.

Proposed class representatives Vincent Farinella, George Cesar and Daniel Schoppe[2] (the "Representative Plaintiffs")[3] and the defendants move jointly for approval of a settlement agreement. The attorneys for the Representative Plaintiffs, Marina Trubitsky & Associates, PLLC ("Class Counsel") move for attorneys' fees and expenses. Purported class member Elizabeth Pawlak moves to intervene.

For the reasons stated below, the motion for approval of the settlement agreement is granted. The motion for attorneys' fees and expenses is granted in part and denied in part. The motion to intervene is denied.

## I. Background

### a. Facts

Defendant eBay operates an internet site that enables sellers to post items for sale and purchasers to search for and purchase such items. Some items are sold in an auction format, while others are sold at fixed prices. PayPal is an online payments company owned by eBay. PayPal's service is a means of transferring funds, both in connection with eBay's online marketplace and other, unrelated sites. Sellers and purchasers may accept or make payments through their PayPal accounts by credit card or bank transfer.

According to the Complaint, as of January 2000, and for some period of time thereafter, PayPal's User Agreement stated "PayPal is the merchant of record with respect to all credit card transactions through the PayPal service to purchase goods or services. As such we afford customers the rights and privileges expected of a credit card transaction." (Compl. ¶ 41.) Under the Fair Credit Billing Act (the "FCBA"), first passed by Congress in 1974, credit card holders are entitled to so-called "chargeback" rights to dispute billing errors that appear on their credit card statement and, in certain circumstances, to receive a credit for such charges pursuant to 15 U.S.C. § 1666. (Compl. ¶ 42.) The Complaint alleges that the "FCBA gives consumers a possibility to recall [ ] wrongful charges," but that such chargeback rights were not available for PayPal customers using their bank accounts or "other immediate sources of payment."[4] (Compl. ¶ 42.)

---

**2.** Plaintiff Schoppe is listed in the complaint as "Daniel Schoppe" (Compl. Caption), "Marjorie Schoppe" (Compl. ¶ 8) and "Danielle Schoppe". (Compl. ¶ 119.)

**3.** The Complaint names plaintiffs Andrea Karvaly, Vincent Farinella, Nanette Aragon, Daniel Schoppe, Christina Siracusa, Jason Etten, George Cesar, Dennis Trubitsky and Douglas Mashkow. The Amended Settlement Agreement dated May 13, 2008 (the "Settlement Agreement") identifies only plaintiffs Farinella, Schoppe, Cesar and Mashkow as Representative Plaintiffs. Mashkow funded his PayPal transaction on or about January 5, 2004. (Compl. ¶ 142.) He therefore does not fit the class definition, which only includes persons "who funded a PayPal transaction after Feb-

ruary 1, 2004". (Prelim. Approval Order ¶ 2; see § II.b infra.) Plaintiff Karavaly's claims were dismissed for Lack of Prosecution on June 18, 2007. Plaintiffs Siracusa, Etten and Trubitsky entered into a Stipulation of Settlement dated November 24, 2008. There has been no submission showing that Plaintiff Aragon has settled or ceased to prosecute her claim. It is not stated in the Complaint whether she funded her transactions with a credit card or from a bank account. (Compl. ¶ 108–118.)

**4.** The Complaint does not articulate what "other immediate sources of payment" the plaintiffs have in mind. Where the Court refers to "non-credit card" sources, or transfers from a bank account, the Court includes

PayPal's User Agreement also referenced a Buyer Complaint Policy and a Buyer Protection Policy (together, the "Policies").[5] The Policies permit buyers to file a complaint with PayPal within forty-five days of a failed transaction to request an investigation and a refund from the seller. (Compl. ¶ 39.) Such refunds, however, are at the discretion of PayPal. (Compl. ¶ 39.) The User Agreement stated that "[t]he Buyer Protection Policy does not replace or reduce any other consumer rights Users might have, including reversal rights that may be granted by a User's credit card issuer." (Compl. ¶ 40).

The Representative Plaintiffs represent PayPal account holders who claim to have been damaged by the failure of PayPal to afford them chargeback rights. (*See* Compl. ¶¶ 119–39 and 158–65.) Each of the Representative Plaintiffs sought to purchase an item found through the eBay website, paid for such purchase using PayPal, funded their purchase by a transfer from a bank account, and, unsatisfied with the outcome of their transaction, attempted without success to obtain a full refund under the Policies. Additional detail regarding the alleged conduct by the defendants can be found in this Court's Memorandum and Order of September 6, 2007, *Karvaly v. eBay, Inc., et al.*, 245 F.R.D. 71, 72–74 (E.D.N.Y.2007) (Glasser, J.) ("*PayPal I*").

### b. Procedural History

### 1. The Settlement Agreement

The parties first submitted a proposed settlement to the Court on October 13, 2006. (Docket No. 71.) After minor changes were made in response to con-

cerns by state Attorneys General relating to their ability to bring suits in the future, the proposed settlement was resubmitted on March 9, 2007 (the "Original Settlement"). (Docket No. 105.) The Original Settlement was rejected by the Court for reasons set forth in *PayPal I*. Chief among the reasons for its rejection was an overbroad definition of the class, namely "all U.S. based PayPal account holders who sent or received a PayPal payment" on or after January 1, 2000. *PayPal I*, 245 F.R.D. at 83. This definition had the effect of releasing claims of the vast majority of the proposed class members for nothing more than injunctive relief in the form of minor modifications to PayPal's website.

The Representative Plaintiffs and the defendants filed a new settlement agreement on May 13, 2008 (the "Settlement Agreement"). This Court granted preliminary approval of the Settlement Agreement, provisionally certified the class and directed dissemination of notice to the class in an order dated August 21, 2008 (the "Preliminary Approval Order"). The provisionally certified class consisted of:

> All U.S. based PayPal account holders who funded a PayPal transaction after February 1, 2004, using a source other than a credit card: (i) who subsequently requested a reversal of the transaction through PayPal's prevailing Buyer Complaint Policy and/or Buyer Protection Policy (collectively, "Policies"); (ii) who did not receive a refund equal to 100% of their transaction payment in response to such request from PayPal or their bank; and (iii) who, through the timely submission of a Claim Form under oath,

---

any such "other immediate sources of payment."

5. The Buyer Complaint Policy and the Buyer Protection Policy appear to be one in the

same. (Compl. ¶ 40.) To the extent that there are differences, it does not bear on the Court's review of the Settlement Agreement.

attest to a reasonable and good faith belief that they would have received a full reversal of such payment had they used a valid credit card in their possession at the time of the subject transaction to fund the payment and filed a timely chargeback request with their credit card issuing bank.[6]

(Prelim. Approval Order 2.)[7]

The Settlement Agreement requires the defendants to deposit $3.5 million into a bank account (the "Settlement Fund") from which payments to certain eligible class members will be made, along with the payment of reasonable administrative costs, attorneys' fees and expenses. (Settlement Agreement ¶¶ 4.6–4.25.) After the payment of administrative costs and attorneys' fees and expenses, the eligible class members will be paid ratably from the remainder of the Settlement Fund in proportion to the amount of their validated claims. (Settlement Agreement ¶ 4.23.) Once the settlement becomes effective, class members release all claims against the defendants "alleged in the original, first amended, and second amended complaints filed in connection with the Litigation, or any State Attorney General's report or investigation involving the same or substantially similar matters, regarding PayPal's alleged failure to fully pay, reimburse, or satisfy Class Members during the Class Period under PayPal's then prevailing Buyer Complaint Policy and/or Buyer Protection Policy." (Settlement Agreement ¶¶ 1.29, 5.1, 7.1.) The Settlement Agreement also specifies that Class Counsel will seek fees in an amount of up to 28% of the Settlement Fund, or $980,000. (Settlement Agreement ¶ 4.11.)

## 2. Notification

The parties effectuated a multifaceted notice program. The claims administrator established a settlement website (www.steelesettlement.com)[8] and posted to it the Notice of Proposed Settlement dated July 24, 2008 (the "Notice") and the claim forms. (Memorandum in Support of Joint Motion for Final Approval dated Nov. 10, 2008 ("Joint Mem."), 1.) A summary form of the Notice was sent to more than 2.2 million email addresses associated with accounts in PayPal's database that (i) funded a PayPal transaction after February 1, 2004, using a source other than a credit card; and (ii) subsequently requested a reversal of the transaction through the Policies.[9] (Joint Mem. 1.) The defendants

6. "Excluded from the Class are any judicial officer to whom this Litigation is assigned; PayPal and eBay and any of its affiliates; any current or former employees, officers, or directors of PayPal or eBay; any persons presently residing outside of the United States; and all Persons who timely and validly request exclusion from the Class pursuant to the Notice disseminated in [ ] accordance with the notice order." (Prelim. Approval Order 2.)

7. The Court clarifies the scope of the Class in § II.b *infra*.

8. Mike Steele was the first plaintiff listed in the initial complaint filed in state court on March 1, 2005. Steele was not identified as a party in the Complaint.

9. The precise characteristics of the account holders who received email notice is unclear from the parties' submissions. First, in moving for preliminary approval of the Settlement Agreement, the parties asserted that notice would go to Class Members, defined in the Settlement Agreement to include only those who returned a claim form. (Memorandum in Support of Joint Motion for Preliminary Approval of Settlement dated May 13, 2008 ("Joint Prelim. Mem."), 13.) The claim form return requirement was omitted from the description of persons to receive notice, and the Court anticipated that email notice would only be sent to those persons that sought a refund pursuant to the Policies, but received less than 100%, as the proposed class definition would suggest. (Prelim. Approval Order, 3–4). However, in a November 10, 2008,

also published a link to the Notice on the Legal Agreements page of the PayPal website, and a summary form of the Notice was published in one daily issue and one weekend issue of USA Today. (Joint Mem. 1–2.)[10]

### 3. Fairness Hearing

On November 17, 2008, this Court held a settlement hearing pursuant to . Fed. R.Civ.P. 23(e)(2) (the "Fairness Hearing"). Arguments were heard on the motion for approval of the settlement and approval of attorneys' fees and expenses. Pawlak was the only objector who made an appearance at the hearing.

## II. Discussion

### a. Objections to the Settlement and Pawlak's Motion to Intervene

### 1. Objectors Morris, Soh, Patterson and Petitt

The Court received five written objections to the settlement. The settlement administrator received sixty-five timely requests for exclusion. Letters from objectors Ted Morris, Michael Soh and Sonny Patterson expressed concern over whether the amount of the settlement consideration was sufficient to cover their claims. For the reasons stated below in § II.d, the Court finds that the consideration will adequately compensate eligible class members.

The letter of objectors Chris and Kimberly Petitt is more in the nature of a general grievance about past dealings with the defendants, suggesting that the compensation should be sufficient to punish the defendants for "egregious conduct". Their complaints are not relevant to the proposed settlement.

### 2. Objector Pawlak

Objector Pawlak's complaints, numbered one to fourteen in her written objections (Docket No. 150–2) can be summarized as follows: (1) the scope of the release is overly broad; (2) the settlement is the product of collusion for the benefit of the defendants and Class Counsel;. (3) the settlement consideration is inadequate; (4) the proposed attorneys' fees are excessive; and (5) the class notice was inadequate.

Each of these issues has been considered by the Court. In summary: (1) the scope of the release has been substantially narrowed to include only those persons who funded their transactions from a bank account after February 1, 2004, addressing the Court's concerns in *PayPal I* (*see* § II.b *infra*); (2) while the terms of the Original Settlement which provided for both a broader release and greater compensation for Class Counsel (33%) may have justified concerns about collusion, the negotiation process and the terms of the Settlement Agreement alleviate such concerns (*see* § II.c *infra*); (3) the settlement consideration is adequate given the small number of claims (*see* § II.d (8–9) *infra*);

---

declaration, the settlement administrator states that the email was not limited to persons that received less than a full refund. (Declaration of Jennifer Keough ¶ 3.) Further, non-U.S. account holders were also apparently sent the email notice. (Fairness Hearing Tr. 3.)

**10.** Although in *PayPal I*, the Court expressed strong reservations about the use of email as the primary method for notifying class members, the Court is satisfied that potential class members in this case are uniquely suited for email notification because (1) their interactions with the defendants have exclusively or predominantly been via email and over the internet and (2) while the email addresses associated with their PayPal accounts have been verified by the defendants, their mailing addresses have not. (*See* Joint Prelim. Mem. 15–18.)

(4) the excessive attorneys' fees have been adjusted by the Court (*see* § II.f.1 *infra*); and (5) the class notice was the best notice practicable under the circumstances (*see* n. 10 *supra*). The Court finds that none of these objections are sufficiently meritorious to prevent the approval of the Settlement Agreement.

## A. Pawlak's Motion to Intervene

Pawlak further seeks to intervene as a party-plaintiff as of right pursuant to Fed. R.Civ.P. 24(a)(2), or in the alternative, at the discretion of the Court pursuant to Fed.R.Civ.P. 24(b)(1)(B).

### i. Intervention as of Right

Rule 24(a)(2) requires the court to permit intervention by anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." "In order to intervene as of right pursuant to Rule 24(a)(2), the applicant must: (1) file a timely motion; (2) show an interest in the litigation; (3) show that its interest may be impaired by the disposition of the action; and (4) show that its interest is not adequately protected by the parties to the action." *In re Holocaust Victim Assets Litigation*, 225 F.3d 191, 197 (2d Cir.2000).

#### (1) Timeliness

■ "The determination of the timeliness of a motion to intervene is within the discretion of the district court, evaluated against the totality of the circumstances before the court." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir.2001) (citing

*Farmland Dairies v. Comm'r of the N.Y. State Dep't of Agric. and Markets*, 847 F.2d 1038, 1043–44 (2d Cir.1988)) (internal quotations omitted). Circumstances considered by the Court in making the timeliness determination include: (i) the length of time the applicant had notice before making the motion; (ii) prejudice to the existing parties from delay; (iii) prejudice to the applicant if the motion is denied; and (iv) any unusual circumstances for or against a finding of timeliness. *D'Amato*, 236 F.3d at 84.

■ Here, Pawlak filed her motion on November 17, 2008, more than two and a half months after notice to potential class members had been sent via email on August 29, 2008, and nearly three months after the Preliminary Approval Order of August 21, 2008. *See D'Amato*, 236 F.3d at 84 (motion to intervene dismissed as untimely where filed more than a year after the complaint was filed, three months following the Court's order that notice be sent and three days prior to the fairness hearing). At the Fairness Hearing, Pawlak denied receiving notice by email. However, the Court is not convinced that Pawlak, herself a patent attorney, was unaware of this litigation, as she had twice sued PayPal in 2008 in Virginia state court with each suit being dismissed.[11]

The existing parties would be prejudiced by Pawlak's intervention because it further delays the payment of compensation to eligible class members for conduct going back to February 2004. Pawlak is not prejudiced because she had the opportunity to opt out of the litigation and pursue her own claim against the defendants, as she has shown that she is willing and capable of doing. Moreover, because Paw-

---

**11.** *See Pawlak v. Paypal*, No. GV07–7929 (General District Court for City of Alexandria, June 12, 2008) and *Pawlak v. Paypal*, No. CL08002291 (Va. Cir. Ct., June 13, 2008), attached as *Exhibit B* to Nov. 10, 2008, Declaration of Michael Rhodes.

lak has alleged no concrete interest in the litigation, as discussed further below, she cannot be prejudiced by the denial of her motion. Finally, there are no circumstances militating in favor of a finding of timeliness. Accordingly, the Court exercises its discretion to find that Pawlak's motion is untimely.

### (2–4) Interest in the Litigation

In her fifty-two pages of submissions to this Court (Docket Nos. 150, 157, 162–64), Pawlak fails to articulate any concrete interest in the litigation. While conclusorily stating in her submissions that she is a class member, Pawlak nowhere describes any PayPal transaction she has ever made.[12] Further, Pawlak fails to show that whatever interest she has would be impaired by the disposition of the action. First, as she acknowledged at the Fairness Hearing, Pawlak had the opportunity to opt out of the settlement if she wished to pursue her own claim against PayPal. Second, based on the number of claims filed at the time of the Fairness Hearing, it appears that claimants are likely to recover the full amount of their claims. *See* § II.d *infra.*

Finally, Pawlak asserts that her purported interests are not adequately represented because Class Counsel failed to sufficiently take into account the damages suffered by the class and the possibility of treble damages available under RICO when negotiating a settlement amount shortly after the initial complaint was filed in 2005. By its nature, a settlement exchanges the uncertain possibility of a larger recovery for the certainty of a smaller recovery. In this case, that smaller recovery is sufficient.

### ii. Intervention by Permission of the Court

Pawlak also requests to intervene by permission of the Court. Rule 24(b)(1)(B) allows the court to permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." "In exercising its discretion the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed.R.Civ.P. 24(b)(3). Again, Pawlak's claims are untimely and she fails to establish her interest. Pawlak's objections to the settlement were presented to the court in written form and orally at the Fairness Hearing, giving the Court an opportunity to take them into account in assessing the fairness of the settlement. *See Holocaust Victim Litig.,* 225 F.3d at 202.

For these reasons, Pawlak's motion to intervene pursuant to Rule 24(a)(2) or Rule 24(b)(1)(B) is denied.

### b. Certification of the Settlement Class

■ The usage of the defined terms "Class" and "Class Member" in the Settlement Agreement is confusing. *See* § I.b.1 *supra.* The definition of "Class Member" includes only persons who submit a claim form asserting under oath their belief that they would have received a full refund for their disputed transaction had they used a

---

12. At the time of the fairness hearing, the parties were unable to say whether Pawlak was a class member. (Tr. 21–22.) Likewise, Pawlak did not clarify her interest in the litigation at the time. (Tr. 24–25, 29–30.) After the fairness hearing, defendants' counsel informed the Court that a business account under the name Secret Justice, Inc. with a user name of Elizabeth Pawlak was sent email notice of the proposed settlement. Pawlak also responded to the Court's request for information, but again did not make any claim as to her interest other than a blanket assertion of class membership. (Docket No. 162.)

credit card.[13] "Class Member" is used to define the persons to whom notice is sent (Settlement Agreement ¶ 4.2) [14] and to establish what persons are granting a release of claims against the defendants. (Settlement Agreement ¶ 5. 1.) [15] This definition is clearly not workable as a basis for distributing notice of the settlement, as the notice must precede the submission of claims. Further, it is not an appropriate basis for the release of liability as it would render the opportunity for persons to exclude themselves from the settlement superfluous because a failure to return the claim form would have the same effect as a request to opt out of the settlement and the release altogether. It would be absurd for the defendants to agree to a settlement that would settle nothing. If only persons who filed a claim became subject to the release, than at any time an identical complaint could be filed by persons who did not file a claim form.

The requirement that claimants return claim forms that affirm their reliance on the language of the User Agreement is an appropriate screening mechanism to ensure that only persons who relied upon the representations of PayPal at issue are entitled to recover from the Settlement Fund. The "Class Members" definition of § 1.5 of the Settlement Agreement actually and accurately describes those persons

eligible to recover from the Settlement Fund (hereinafter, the "Eligible Class Members").

In view of the foregoing, as a modification of this Court's Preliminary Approval Order approving the certification of a settlement class pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3) [16], a settlement class consisting of the following persons is hereby certified:

> All U.S. based PayPal account holders who funded a PayPal transaction after February 1, 2004, using a source other than a credit card: (i) who subsequently requested a reversal of the transaction through PayPal's prevailing Buyer Complaint Policy and/or Buyer Protection Policy (collectively, "Policies"); and (ii) who did not receive a refund equal to 100% of their transaction payment in response to such request from PayPal or their bank.

(the "Settlement Class"). The Court's findings in support of certification follow.

## 1. Rule 23(a) Factors

■ The Settlement Agreement purports to "stipulate to the certification of the Class, for settlement purposes only, pursuant to Rules 23(a) and (b)(3) ..." (Settlement Agreement ¶ 3.1.) Notwithstanding the parties' willingness to stipu-

---

13. "... (iii) who, through the timely submission of a Claim Form under oath, attest to a reasonable and good faith belief that they would have received a full reversal of such payment had they used a valid credit card in their possession at the time of the subject transaction to fund the payment and filed a timely chargeback request with their credit card issuing bank." (Settlement Agreement ¶ 1.3.)

14. "As soon as reasonably practicable after the Court certifies the tentative Settlement Class, preliminarily approves the proposed Settlement, and approves the forms of notice, PayPal shall: Email the Notice to each Class

Member's last known primary email address...." (Settlement Agreement ¶ 4.1.)

15. "Upon the Effective Date, each of the Representative Plaintiffs and each of the Class Members will be deemed to have, and by operation of the Judgment will have, fully, finally, and forever released, relinquished, and discharged the Protected Persons from all Released Claims." (Settlement Agreement ¶ 5.2.)

16. The Certification Order may be modified prior to final judgment pursuant to 23(c)(1)(C).

late to the facts necessary for the certification of the class for settlement purposes, the Court bears an independent responsibility to make a determination that every Rule 23 requirement is met before certifying a class. *PayPal I*, 245 F.R.D. at 78. Rule 23(a) states that a class action is maintainable only if:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

### (1) Numerosity

■ The parties' claim that there are approximately two million members of the Settlement Class, (Joint Prelim. Mem. 4), appears to be overstated. However, the filing of more than three thousand claim forms as of the time of the Fairness Hearing supports a finding of numerosity.

### (2) Commonality

Rule 23(a)(2), which requires the existence of "questions of law or fact common to the class," is satisfied here. Each member of the Settlement Class was a PayPal account holder who funded a disputed transaction from a non-credit card source and complained through the Policies described in the User Agreement. The claims of each Settlement Class member turn on whether the terms of the Policies were breached by PayPal.

### (3) Typicality

The typicality requirement is concerned with whether the class representatives are appropriate representatives of the class, and is generally satisfied "[a]s long as plaintiffs assert ... that defendants committed the same wrongful acts in the same manner against all members of the class, they establish necessary typicality." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 208 (S.D.N.Y.1995) (quoting *In re AmeriFirst Sec. Litig.*, 139 F.R.D. 423, 429 (S.D.Fla.1991)). The three Representative Plaintiffs each are U.S. residents who made one or more purchases through PayPal funding their transaction by bank transfer after February 1, 2004. As with the rest of the Settlement Class, the validity of their claims turns upon a finding that the terms of the Policies were breached by PayPal.

### (4) Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The proposed class representative must have both an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir.2006). There is no indication that any of the Representative Plaintiffs maintain interests that are inconsistent with the claims of the proposed class.[17]

### 2. Rule 23(b)(3) Factors

If each of the Rule 23(a) factors are met, "parties seeking class certification must

---

**17.** In *PayPal I*, the Court found that the typicality and adequacy prongs were not satisfied because the proposed settlement released the claims of all PayPal customers, but only provided meaningful compensation to the non-credit card customers. *See PayPal I*, 245 F.R.D. at 83 ("the claims for a share of a $3.5 million settlement can hardly be said to share the 'same essential characteristics' as those of a much larger group who can expect to receive nothing of significant value, yet must ... surrender their own rights to sue the defendants"). Here, the settlement is largely the same, but only non-credit card customers that sought relief under PayPal's Policies are part of the Settlement Class.

show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). The parties here propose certification of the class pursuant to Rule 23(b)(3), which permits a litigant to maintain a class action if the court "finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fair and efficient adjudication of the controversy."

### (1) Predominance of Common Issues of Law and Fact

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623, 117 S.Ct. 2231.

> The court is required to find, as a condition of holding that a [(b)(3)] class action may be maintained ... that the questions common to the class predominate over the questions affecting individual members. It is only where this predominance exists that economies can be achieved by means of the class-action device ...

Rules Advisory Committee Notes to 1966 Amendments to Rule 23.

■ The predominance requirement cannot be satisfied in connection with the plaintiffs' RICO claim because individual issues predominate over questions common to the class. Nor is it satisfied with respect to the New York statutory deceptive trade practices and false advertising claims because only a small subset of plaintiffs can satisfy the requirement that the relevant acts took place in the State of New York. As discussed below, only the plain-

tiffs' contract claim supports a finding of predominance.

To fulfill the RICO requirement that a plaintiff's injury occur "by reason of" a defendant's action, 18 U.S.C. § 1964(c), a plaintiff must show "that the defendant's violation not only was a 'but for' cause of his injury, but was the proximate cause as well." *McLaughlin v. American Tobacco Co.,* 522 F.3d 215, 222 (2d Cir.2008) (reversing the district court's class certification of smokers of light cigarettes for failure to satisfy the predominance requirement) (citing *Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992)).

In *McLaughlin,* where, as here, the class was purportedly injured because of its reliance on misleading information provided to the public, the Court held that common questions did not predominate as to reliance, loss causation or injury. *McLaughlin,* 522 F.3d at 222. "[W]hen mail or wire fraud is the predicate act for a civil RICO claim, the transaction or 'but for' causation element requires the plaintiff to demonstrate that he relied on the defendant's misrepresentation." *Id.* at 222. "Individualized proof is needed to overcome the possibility that a member of the purported class purchased Lights for some reason other than the belief that Lights were a healthier alternative—for example, if a Lights smoker ... preferred the taste of Lights...." *McLaughlin,* 522 F.3d at 223 (citing *Moore v. PaineWebber, Inc.,* 306 F.3d 1247 (2d Cir.2002)).

Here, following *McLaughlin,* the plaintiffs can not use generalized proof to show that reliance on the User Agreement's alleged misrepresentation was the proximate cause of the plaintiffs' decisions to make their transaction via PayPal and to fund their payment from a bank account.[18] In

---

18. Furthermore, "[a] plaintiff alleging a viola- tion of civil RICO must also establish loss

view such need for individualized proof, predominance is not satisfied as to the RICO claims.

The claims of deceptive trade practices and false advertising in violation of New York Gen. Bus. L. §§ 349 ("Section 349") and 350 ("Section 350") are also problematic under the predominance prong.[19] Unlike RICO, these claims do not sound in fraud, and therefore do not require individualized proof of reliance. *See* 21 N.Y. Jur.2d *Consumer and Borrower Protection* § 7 ("there is no requirement under [§ 349] that the acts or practices be intentional, fraudulent, or even reckless"). However, § 349 requires that "the transaction in which the consumer is deceived must occur in New York." *Goshen,* 98 N.Y.2d at 324, 746 N.Y.S.2d 858, 774 N.E.2d 1190.

Here, while some of the class members accepted PayPal's User Agreement in New York, most of them accepted it in another state. The plaintiffs might have overcome this hurdle by alleging violations of the deceptive trade practice statutes of various states (in addition to § 349) in the Complaint, but they failed to do so. *Cassese v. Washington Mutual, Inc.,* 255 F.R.D. 89, 97–98 (E.D.N.Y.2008) ("potential variations among state consumer protection statutes do not preclude certification .... even if a substantial variation ... were to arise, the Court may employ subclasses or decertify those state law subclasses whose adjudica-

tion becomes unmanageable") (internal citations omitted); *contra In re Grand Theft Auto,* 251 F.R.D. 139, 154 (S.D.N.Y.2008) ("because reliance is an element of consumer fraud in some states, the alleged uniformity of the defendants' fraudulent conduct is insufficient, on its own, to justify a finding of predominance") (citing *McLaughlin,* 522 F.3d at 223) (internal citations omitted).

To satisfy the predominance prong, the Court must look to the plaintiffs' contract claim. Courts in this district have held that differences in state contract law do not defeat the predominance prong. *Steinberg v. Nationwide Mutual Ins. Co.,* 224 F.R.D. 67, 76 (E.D.N.Y.2004) (variations in state law of contracts did not preclude certification where "claim is for the simple breach of a standard form contract and involves only the standard rules of contract interpretation."); *In re Nigeria Charter Flights Contract Litig.,* 233 F.R.D. 297, 305 (E.D.N.Y.2006) ("most other district court cases from this circuit have declined to consider potential variation in state law among the plaintiffs' claims." (collecting cases) "Some of these cases make the point that there is often little variation between the basic common law of the states.")

█ Here, on the plaintiffs' contract claim, the issue of whether PayPal's User Agreement was breached when customers

---

19. Section 349 provides: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." Similarly, § 350 provides: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful." The standard of recovery under § 350, while specific to false advertising, is otherwise identical to § 349. *Goshen v. Mutual Life Ins. Co. of N.Y.,* 98 N.Y.2d 314, 324, n. 1, 746 N.Y.S.2d 858, 774 N.E.2d 1190 (2002).

causation, meaning that the defendant's misrepresentations caused the plaintiff 'to suffer economic loss.'" *McLaughlin,* 522 F.3d at 226 (citing *Moore,* 189 F.3d at 170). Here, the plaintiffs' theory is that they suffered an economic loss because they believed that any losses suffered due to defects in their purchases would be insured by PayPal. The Court has difficulty avoiding the conclusion that the plaintiffs' losses were caused by sellers who failed to deliver goods as promised.

funding their transactions from a bank account were not granted a chargeback for their disputed transactions predominates over any individual issues. Therefore, the predominance prong is satisfied.

### (2) Superiority of Class Action

The superiority prong is intended to ensure that a class action is superior to other available methods of adjudicating the claims. While the court may consider other relevant factors, Rule 23(b)(3) calls for an examination of the following:

> (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating litigation in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

Rule 23(b)(3). The interests of the class members in individually controlling the prosecution of this case appear to be minimal. The parties have represented that recoveries for Settlement Class members will generally be too small to justify an individual action, and that no other litigation addressing the claims raised in the Complaint has been filed. (Joint Prelim. Mem. 8.) Furthermore, there is no apparent reason why concentrating the litigation in this forum would be undesirable.

As for the manageability factor, the Supreme Court has held that in evaluating a settlement "a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem,* 521 U.S. at 620, 117 S.Ct. 2231.

### c. Procedural Fairness: The Negotiation Process

■ "The District Court determines a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms." *D'Amato,* 236 F.3d at 85 (2d Cir.2001).

Here, among Pawlak's objections to the settlement is that Class Counsel's willingness to discuss an early settlement evinced a lack of seriousness in pursuing the plaintiffs' claims. In support of her objection, Pawlak points to the initiation of settlement discussions between the parties as early as April 2005, including the proffered estimate by the defendants of the value of the plaintiffs' claims at $3.5 million in a meeting with Class Counsel on April 22, 2005 (Plaintiff's Reply Brief in Support of Motion to Remand dated Sept. 30, 2005), and Class Counsel's subsequent request that $3.5 million be the monetary floor for settlement negotiations. (Defendant's Opposition to Motion to Remand dated August 15, 2005).

Despite the early discussion of settlement numbers, Class Counsel and defendants' counsel continued to joust over whether state or federal court jurisdiction was proper and negotiated with the assistance of Retired United States District Judge Nicholas Politan for several months before first presenting a settlement to the Court on October 13, 2006. This Circuit has recognized that the involvement of a mediator in pre-certification settlement negotiations helps to ensure that the proceedings are free of collusion and undue pressure. *See D'Amato,* 236 F.3d at 85.

Pawlak's concerns over collusion are not entirely unwarranted. It could be reasonably inferred from the terms of the Original Settlement that the claims of a majority of PayPal customers were sacrificed for the benefit of the non-credit card custom-

ers. As the Court stated in *PayPal I*, "only the Eligible Class Members—a very narrow subset of the broadly-defined class—are entitled under the proposed Settlement Agreement to anything more than injunctive relief in the form of various disclosures on PayPal's website." 245 F.R.D. at 78.

Whether this infirmity in the original agreement was the product of collusion, confusion or poor draftsmanship, the fact is that the parties returned to the negotiating table, this time with the assistance of Magistrate Judge Victor Pohorelsky, and negotiated an agreement that provided the same $3.5 million Settlement Fund with a substantially smaller settlement class. Thus, the non-credit card customers were given access to the same settlement consideration without the release of the claims of other PayPal customers.

Taking into consideration of the use of respected mediators and the renegotiation of the Settlement Agreement to limit the scope of the release, thereby significantly reducing its value to the defendants, the Court finds that the negotiation process fairly protected the interest of the Settlement Class.

### d. Substantive Fairness: The Settlement Terms

█ The Court may only approve the terms of a class settlement "on finding that it is fair, reasonable, and adequate." Fed.R.Civ.P. 23(e). In making such a determination, Courts in this Circuit consider the following factors:

(1) the complexity, expense and likely duration of the litigation; (2) the reac-

tion of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 117 (2d Cir.2005) (citing *City of Detroit v. Grinnell,* 495 F.2d 448, 463 (2d Cir.1974)). In its consideration of these factors, "[t]he Court must eschew any rubber stamp approval in favor of an independent evaluation, yet, at the same time, it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Grinnell,* 495 F.2d at 462 (abrogated on other grounds by *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 48 (2d Cir. 2000)).

### (1) Complexity, Expense and Likely Duration of the Litigation

█ The parties assert that this factor weighs in favor of settlement simply because class actions and RICO claims are in themselves complex, expensive and long lasting. (Joint Memo. 7). This cursory argument assumes that the claims are sufficiently meritorious to survive the additional motion practice that would likely precede any trial on the merits.[20] In any case, the challenges of establishing liability

---

**20.** At the time the parties first submitted a settlement on October 13, 2006, the plaintiffs had amended their initial complaint to exclude their RICO claims in an effort to have the case remanded to state court. On December 20, 2006, the plaintiffs filed the Com-

plaint, restoring the RICO claims. The Court infers that this sequence of events was a reflection of the limited importance and questionable merit of the RICO claims in this action.

and damages described below suggest that continued litigation is likely to be complex, expensive and long, weighing in favor of approval.

### (2) Reaction of the Class

Five objections and sixty-five exclusions were filed after notice had been sent via email to more than 2.2 million PayPal users that had complained about their transactions. The parties point to this small number of objections and exclusions as evidence of overwhelming support for the Settlement Agreement. The number of objections and exclusions, however, was more proportionate to the response rate. As of November 3, 2008, more than two months after the email notice was sent on August 29, 2008, only 3,145 claim forms had been filed with just six weeks remaining before the December 14 deadline. Because the 2.2 million accounts receiving notice appear to include non-U.S. PayPal users (Fairness Hearing Tr. 3), users that did not rely upon the language of PayPal's allegedly defective User Agreement, users that did not have the option of using a credit card, and users that got a full refund through the Policies or from the seller (see Joint Mem. 13), it is not clear whether or not the 3,145 responses represents a significant portion of the Eligible Class Members.

The objections are entitled to little weight for the reasons summarized in § II.a *supra*. Therefore, even though the Court has neither a final tally of the number of claims filed nor a good estimate of the size of the Settlement Class, the Court can still find that the small number of objections and exclusions weighs in favor of approval.

### (3) Stage of Proceedings and Amount of Discovery

This factor relates to whether the plaintiffs had sufficient information on the merits of the case to enter into a settlement, *Cinelli v. MCS Claim Services, Inc.*, 236 F.R.D. 118, 121 (E.D.N.Y.2006), and whether the Court has sufficient information to evaluate such a settlement. *Wal-Mart*, 396 F.3d 96, 118.

In this case, while there was no formal discovery, PayPal provided to Class Counsel "thousands of pages of key internal documents concerning PayPal's various User Agreements and Buyer Complaint Policies," in the course of mediation. (Joint Mem. 9.) This formed an adequate basis for the plaintiffs to assess their claims. Moreover, discovery into areas such as the practices of third party credit card issuers for granting chargebacks may prejudice the plaintiffs' case rather than enhance it. Further, through their submissions, the parties have provided sufficient information for the Court to evaluate the settlement. Therefore, the Court is satisfied that Class Members are not prejudiced by the absence of formal discovery.

### (4–6) Risks of Establishing Liability and Damages and of Maintaining the Action Through Trial

"In assessing the Settlement, the Court should balance the benefits afforded to the Class, including the *immediacy* and *certainty* of a recovery, against the continuing risks of litigation." *In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761(CM), 2008 WL 2944620, at *4 (S.D.N.Y. July 31, 2008) (emphasis in original).

Here, the challenges to establishing the defendants' liability are legion. In order to show that PayPal breached the User Agreement, the plaintiffs would need to show that the language in PayPal's User Agreement giving customers "the rights and privileges expected of a credit card transaction" applied to PayPal transactions

funded by bank accounts, even though this assurance was provided under the heading "Credit Card Transactions". (Joint Mem. 10; Fee Mem. 25.[21]) The plaintiffs also would need to show that the reversal rights provided to non-credit card customers under the Policies actually were inferior to those provided by credit card issuers. (Joint Mem. 10.) ("While Plaintiffs assume that credit card issuers grant every chargeback request submitted, PayPal is confident that third party discovery would reveal otherwise.")

The RICO claim presents many unique difficulties. For example, in order to establish the predicate acts of mail or wire fraud, the class would have to show that the defendants participated in a scheme to defraud and evinced a specific intent to defraud. *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 127 (S.D.N.Y.1997). "Furthermore, when factors other than the defendant's fraud are an intervening direct cause of a plaintiff's injury, the same injury cannot be said to have occurred by reason of the defendant's actions." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994). *See* n. 18, *supra.* In any case, although the Court has not had the benefit of reviewing discovery materials, it appears that a RICO action would be difficult to sustain.

Similar challenges arise in establishing damages. Even if it can be proved that the plaintiffs' chargeback requests would have fared better had they funded their transactions with credit cards, the amount of damages could turn on how much better they would have fared. (Joint Mem. 12.) A further difficulty is that PayPal claims to have altered the offending language in

the User Agreement on February 13, 2004, just twelve days after the February 1, 2004 start date of the relevant period. (Fee Mem. 30.) Therefore, allowable claims very likely would have been limited to transactions that came within this twelve day window.

While the Court has preliminarily certified the class for settlement purposes, it has not been certified for trial and the defendants assert that in the absence of the settlement agreement, they would have opposed class certification. *See also* § II.b *supra.* In reviewing these three factors, the difficulties in establishing liability and damages and in maintaining the action weigh in favor of settlement.

**(7) Ability of Defendants to Withstand a Greater Judgment**

Whether or not it would be warranted, the defendants clearly could withstand a greater judgment. This factor weighs against approval of the settlement. However, "[t]he fact that a defendant is able to pay more that it offers in settlement does not, standing alone, indicate the settlement is unreasonable or inadequate." *PaineWebber P'ships Litig.*, 171 F.R.D. at 129.

**(8–9) Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All the Attendant Risks of Litigation**

The parties first "concede" that an estimate of the largest possible recovery is speculative and cannot be estimated. (Joint Mem. 14.) Nonetheless, the Joint Memorandum then references the calculation made in Class Counsel's declaration, estimating the largest possible recovery by

---

**21.** Plaintiffs' Memorandum of Law in Support of Application for (1) an Award of Attorney's Fees and Reimbursement of Costs and Expenses and (2) an Award to Lead Plaintiff Vincent Farinella for his Reasonable Costs and Expenses dated November 10, 2008 ("Fee Mem.").

taking the number of persons to whom notice was sent, 2.2 million, multiplied by the average claim of the Representative Plaintiffs of $169.92, for a figure in excess of $375 million.[22] (Joint Mem. 14.) Unfortunately, in Class Counsel's discussions with "countless PayPal users" in the course of its investigation (Joint Mem. 9), Class Counsel was not able to generate a more meaningful estimate of the possible recovery. The Court also suspects that with a review of its data banks, the defendants could have filtered out non-U.S. accounts and claims that were paid in full to reach a better estimate of the number of class members and provided a better estimate of the size of their transactions.

As it is, the most useful information provided to the Court for evaluating the size of the settlement is the number of claim forms filed as of November 3, 2008. As of that date, 3,145 claim forms had been received. (Fee Mem. 15.) The parties estimate that the number of claims was unlikely to double prior to the end of the claim period on December 14, 2008. (Fee Mem. 15.) Even if the number of claims were to double to 6,290, and the settlement fund were reduced to $2 million after attorneys' fees and administrative costs, the average award would be approximately $318. If the average claim is less than $200 as the parties suggest, this is an excellent result for the claimants. Even if the average claim is higher by a factor of two or three, a $318 recovery on a $600 claim would still be an excellent result for a claim where litigation clearly presents substantial risks.[23] These factors also weigh in favor of settlement.

In considering the Settlement Agreement, the Court is mindful of the "strong judicial policy in favor of settlements, particularly in the class action context." *PaineWebber P'ships Litig.*, 147 F.3d at 138; *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir.1982) ("The settlement of complex class action litigations are clearly favored by the courts."). While the Court is hesitant to grant its imprimatur to the settlement of claims that may be lacking in merit, any such concerns are admittedly limited by the lack of discovery and briefing.

In reviewing a settlement, the Court's role is primarily in protecting the class members, not protecting defendants from settling claims as they see fit. Those Class Members that have made themselves eligible for recovery by submitting claim forms will be well compensated. Accordingly, in weighing the *Grinnell* factors, the Court finds the settlement amount to be fair and reasonable.

### e. Plan of Allocation

"To warrant approval, the plan of allocation must meet the standards by which the ... settlement was scrutinized—namely, it must be fair and adequate." *Maley v. Del Global Techs. Corp.*, 186 F.Supp.2d 358, 367 (S.D.N.Y.2002).

The Settlement Agreement distributes the Settlement Fund (less administrative costs, the fee award, any applicable taxes and tax expenses and any awards for Representative Plaintiffs) to the Settlement Class in proportion to the amount of their approved claims. (Settlement Agreement ¶ 4.22). For example, if $2.5 million re-

---

**22.** The $169.92 figure includes the claim of plaintiff Douglas Mashkow. *See* n. 3, *supra.*

**23.** Approximately seven years ago, the average PayPal transaction was $55. *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165, 1173

(N.D.Cal.2002). This data point gives some confidence that the size of the claims of the Representative Plaintiffs (averaging approximately $170) are at least within the correct order of magnitude.

mains in the fund for the Settlement Class and $5 million in claims are made, than each Eligible Class Member will be paid fifty percent of their claim. Likewise, if $1.25 million in claims are made, each Eligible Class member will be paid two hundred percent of their claim. Because of this pro rata distribution feature, the Settlement Fund will be distributed in its entirety and no residual funds will remain. This method of allocation is both fair and adequate, and is therefore approved.

### f. Attorneys' Fees and Expenses

Class Counsel requests attorneys' fees of 28% of the $3.5 million Settlement Fund, or $980,000. In addition, Class Counsel requests $51,080.34 for its expenses and $2500 in expenses for Plaintiff Farinella. The fees and expenses will be drawn from the Settlement Fund. The fee award and expenses are not opposed by the defendants.

### 1. Attorneys' Fees

■ "Under the common fund doctrine, a party that secured a fund for the benefit of others, in addition to himself, may recover his costs, including his attorney's fees, from the fund itself or directly from the other parties enjoying the benefit." *In re Holocaust Victim Assets Litig.*, 424 F.3d 150, 157 (2d Cir.2005) (citing *Savoie v. Merchants Bank*, 84 F.3d 52, 56 (2d Cir.1996)) (internal quotations omitted). "The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980) (internal citations omitted).

■ In this Circuit, courts may calculate reasonable attorneys' fees from a common fund based either on the percentage of the recovery method or the lodestar method. *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir.2000). Under the percentage method, attorneys' fees are set by the court as a percentage of the common fund. Under the lodestar method, the fee is arrived at by multiplying the hours expended by class counsel by appropriate hourly rates, and may then be adjusted by a multiplier determined at the discretion of the court, taking into consideration the contingent nature of payment, the quality of representation and the results achieved. *In re Arakis Energy Corporation Securities Litig.*, No. 95 Civ. 3431(ARR), 2001 WL 1590512, at *15 (E.D.N.Y. Oct. 31, 2001). Where the percentage method is used, the use of the lodestar method as a cross-check on the reasonableness of the percentage is encouraged. *Goldberger*, 209 F.3d at 50.

> The trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation. In contrast, the lodestar creates an unanticipated disincentive to early settlements, tempts lawyers to run up their hours, and compels district courts to engage in a gimlet-eyed review of line-item fee audits.

*Wal–Mart*, 396 F.3d at 121 (internal citations and quotation marks omitted).

■ Here, the Court elects to apply the percentage method. Because the Settlement Agreement provides that fees are taken directly from the Settlement Fund, there is a direct relationship between the size of the Settlement Fund and the fees of Class Counsel. This is consistent with the intent of the percentage method to reward results rather than hours spent. Further, many of the hours expended in this case are not attributable to the recovery available to the Eligible Class Members, but

rather went to pursuing claims against the Essex Defendants that were dismissed by the plaintiffs for no consideration and claims on behalf of a purported class of credit card customers of PayPal who received no benefit from the Settlement Agreement. Therefore, Class Counsel's lodestar calculation may reflect many hours spent on unsuccessful claims.

■■■ Whether the lodestar or the percentage method is used, district courts in this Circuit are guided by the following criteria in awarding reasonable attorneys' fees: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50.

### (1) Time and Labor Expended by Counsel

■■■ Class Counsel submits that 3930.85 hours were expended prior to the November 17, 2008 Fairness Hearing, resulting in a lodestar of $1,171,372.50. (Fee Mem. 23.) Approximately two-thirds of the hours are billed at $350 by Marina Trubitsky, with an average hourly rate of $298 for all of the legal services of Class Counsel.[24] This is the equivalent of two years of the working life of an attorney, dedicated solely to achieving a settlement for PayPal users allegedly defrauded by PayPal's User Agreement.

According to Class Counsel's submission, this time was spent interviewing prospective class members and reviewing their transactions, researching prior actions against PayPal, researching the law of the case, estimating damages, briefing and arguing motions, preparing discovery,

engaging in settlement negotiations, reviewing documents pertaining to PayPal's User Agreement, analyzing financial documents, and consulting with advisers and experts. (Fee Mem. 21–22.)

The Court has concerns about how much of, and how efficiently Class Counsel's time was devoted to the claims of the Settlement Class members. First, the claims against the Essex Defendants were dismissed without consideration, and the relationship of those claims to the claims of the Settlement Class against eBay and PayPal is tangential at best. The central question in the claims against the Essex Defendants—whether Essex properly disclosed alleged defects in its merchandise—is unrelated to the question of whether PayPal's User Agreement was breached or was misleading. Shortly after the Essex Defendants moved to dismiss these claims, they were dropped by the plaintiffs for no consideration. *See Top Tankers*, 2008 WL 2944620 at * 14 ("Rather than respond to [defendant's Motion to Dismiss], Lead Counsel threw in the towel and filed a second amended complaint that dropped nearly every serious (and scurrilous) allegation against defendants.")

While the claims of PayPal customers that funded their transactions with a credit card may have been more closely related to those of the non-credit card Settlement Class, the Court notes that the claims of those named plaintiffs who funded their PayPal transactions with a credit card were separately settled for $77,500. This figure presumably includes substantial attorneys' fees, because it is sufficient to make plaintiffs Siracusa, Etten and Trubitsky whole several times over, as their disputed purchases were a digital camera, an inkjet printer and two notebook computers. (Compl.¶¶ 97, 150, 167, 171.)

---

**24.** A list of the individuals that billed time, the hours they billed and their respective rates is provided as *Exhibit I* to the Fee Memorandum.

## (2) The Magnitude and Complexities of the Litigation

Class Counsel relies on the assertion that RICO cases are typically complex and acknowledges having to take additional time to develop knowledge of civil RICO practice. (Fee Mem. 25). This factor, however, is mitigated by the fact that the litigation did not advance past the pleading stage and advanced straight to the negotiation of a settlement, obviating the need to fully develop proof of RICO's elements. Furthermore, it is unclear that the plaintiffs would have pursued their RICO allegations given that they were willing to abandon those claims in order to remand the case to state court.[25] The Court acknowledges that both class action cases and RICO claims give rise to unique complexities. However, given the fact that the need to fully delve into these complexities was obviated by early efforts at mediation and settlement, this factor does not weigh in favor of a substantial fee award.

## (3) Risk of Litigation

This factor is intended to recognize the fact that cases taken on a contingent fee basis entail risk of non-payment for the attorneys that prosecute them, and it embodies an assumption that contingency work is entitled to greater compensation than non-contingency work.

In discussing this factor (Fee Mem. 25–33), Class Counsel all but concedes that the litigation had little realistic hope of success. In detailing the risk of litigation, Class Counsel lists such weaknesses in the plaintiffs' case as: difficulties in establishing that the User Agreement's purported misrepresentations were false; difficulties in proving a scheme to defraud with specific intent to defraud under RICO; the risk of the class period being reduced to only twelve days; the risk of a res judicata dismissal due to the scope of another settlement in the Northern District of California; and the risk of maintaining the class where plaintiffs may have to make certain individualized showings. *See generally*, § II.b *supra.*

"Risk falls along a spectrum, and should be accounted for accordingly. For example, [the Second Circuit has] held that public policy considerations justified the award of no contingency allowance in a case that was risky simply because it was of 'highly questionable merit.'" *Goldberger*, 209 F.3d at 54 (2d Cir.2000) (citing *In re Agent Orange Product Liability Litigation*, 818 F.2d 226, 235–36 (2d Cir.1987)). "Similarly, there are cases where the risk is 'so slight' that any enhancement for the contingent nature of the fee must be 'minimal.'" *Goldberger*, 209 F.3d at 54 (2d Cir.2000) (citing *Lindy I*, 487 F.2d at 168). *See also In re Stock Exchanges Options Trading Antitrust Litig.*, No. 99 Civ. 0962(RCC), 2006 WL 3498590, *8 (S.D.N.Y. Dec. 4, 2006) ("If attorneys in class actions were compensated based on the merit of the claims they advanced, Class Counsel would be awarded zero dollars for their seven years of litigation. The Court would find no great injustice in that outcome."). In considering this fac-

---

**25.** After the defendants removed the case from state court on the basis of federal subject matter jurisdiction on April 5, 2005 (Docket No. 1), plaintiffs filed an amended complaint in state court omitting the RICO claims on April 15, 2005 (*See* Docket No. 15). Upon recognizing that their amended complaint in state court was improper because venue had been transferred to this Court, plaintiffs filed an amended complaint in this Court on April 28, 2005 that also omitted the RICO claims (Docket No. 12), and moved to remand the case to state court on May 4, 2005 (Docket No. 13). The defendants amended their notice of removal on May 11, 2005 (Docket No. 17), to invoke 28 U.S.C. § 1332(d)(2), as provided for by the Class Action Fairness Act of 2005 as the basis for federal jurisdiction.

tor, the Court concludes that the riskiness of the litigation does not support a substantial award of attorneys' fees.

### (4) Quality of Representation

Class Counsel paints itself as David ("a single attorney and an associate") against the defendant's Golaith ("a large national law firm with over seven hundred attorneys ... and practically unlimited resources.") (Fee Mem. 34–35.) Defendants' counsel purportedly "tenaciously challenged Plaintiffs at every stage of the litigation." (Fee Mem. 34.) This image, however, is difficult to reconcile with the fact that the defendants never filed a motion to dismiss the plaintiffs' various complaints and sought to mediate the dispute at the outset.

As evidence of their skill, Class Counsel takes credit for the main improvement from the Original Settlement, the narrowing of the settlement class, calling it "truly an outstanding achievement given the fact that in prior PayPal litigations Defendants were unwilling to narrow the release and tenaciously objected to Plaintiffs' Counsel's attempts to narrow the release to that magnitude in this action." (Fee Mem. 35.) At the risk of sounding immodest, the Court suspects that its rejection of the broad scope of the release in *PayPal I*— then urged upon the Court by Class Counsel—was the main impetus for the narrowing of the release.

Class Counsel also claims substantial experience. (Trubitsky Decl. ¶ 91.) However, lead attorney Trubitsky was a member of the bar for only five years when this action was brought and has named no other class action where she was lead counsel. Apparent missteps, such as filing an amended complaint in state court after the case had been removed, may suggest that at least some of the 4000 hours documented by her firm were spent learning to navigate those legal intricacies that are well known to more experienced counsel.

### (5) The Requested Fee in Relation to the Settlement

Class Counsel moves for fees in the amount of 28% of the Settlement Fund. In support of the request, they cite a 2007 case awarding fees of 30% of a $15.175 million settlement *Taft v. Ackermans,* No. 02 Civ. 7951(PKL), 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) and a 1995 case awarding fees of 33% of a $4.375 million settlement *In re Greenwich Pharm. Sec. Litig.,* Civ. A. No. 92–3071, 1995 WL 251293 (E.D.Pa. April 26, 1995).

However, a review of 2008 district court decisions in this Circuit applying the *Goldberger* factors, places attorneys' fees of 28% at the high end of the spectrum. *See In re Bayer AG Securities Litigation,* No. 03 Civ. 1546(WHP), 2008 WL 5336691 (S.D.N.Y. Dec. 15, 2008) (fee award of 12% of $18.5 million settlement); *Banyai v. Mazur,* No. 00 Civ. 9806(SHS), 2008 WL 5110912 (S.D.N.Y. Dec. 2, 2008) (fee award of 20% of $6.1 million settlement); *Park v. The Thomson Corp.,* No. 05 Civ. 2931(WHP), 2008 WL 4684232 (S.D.N.Y. Oct. 22, 2008) (fee award of 15.6% of $13 million settlement); *Warren v. Xerox Corp.,* No. 01 Civ. 2909(JG), 2008 WL 4371367 (E.D.N.Y. Sept. 19, 2008) (fee award of approximately 25% of $12 million settlement); *In re Telik, Inc. Sec. Litig.,* 576 F.Supp.2d 570 (S.D.N.Y.2008) (fee award of 25% of $5 million settlement); *Ayers v. SGS Control Services, Inc.,* No. 06 Civ. 7111(RMB), 03 Civ. 9078(RMB), 2008 WL 4185813 (S.D.N.Y. Sept. 9, 2008) (fee award of 19% of $7.25 million settlement); *Top Tankers,* 2008 WL 2944620 (fee award of 10% in $1.2 million settlement); *In re Merrill Lynch Tyco Research Sec. Litig.,* 249 F.R.D. 124 (S.D.N.Y.2008) (fee award of 22.5% of $4.9

million settlement); *In re Renaissancere Holdings Ltd. Sec. Litig.*, No. 05 Civ. 6764(WHP), 2008 WL 236684 (S.D.N.Y. Jan. 18, 2008) (fee award of approximately 10% of $13.5 million settlement fund); *In re Ramp Corp. Sec. Litig.*, No. 05 Civ. 6521(DLC), 2008 WL 58938 (S.D.N.Y. Jan. 3, 2008) (fee award of approximately 15% of $2.075 million settlement).

### (6) Public Policy Considerations

Public policy should encourage meritorious suits and discourage frivolous ones. The Court is troubled by the public policy ramifications of awarding substantial fees in cases of questionable merit such as this one. The Court is also cognizant that it is not the guardian of the rights of class action defendants. As responsible as Class Counsel may be for raising questionable legal arguments, the defendants are no less responsible for the result because of their failure to even file a motion to dismiss.

In consideration of the fact that fees of 3% of the Settlement Fund, or $105,000, were requested for work made necessary only due to the flaws of the first settlement agreement brought before this Court, the Court begins by reducing the requested fees by such amount to 25% of the Settlement Fund, or $875,000. In consideration of the substantial amount of time that was devoted to largely unrelated claims and claims for which counsel otherwise received compensation, the Court further reduces the fee requested to 20% of the Settlement Fund, or $700,000. *See McDonald ex rel Prendergast v. Pension Plan of the NYSA–ILA Pension Trust Fund*, 450 F.3d 91 (2d Cir.2006) (affirming the district court's reduction of requested fees by 25% for work on unsuccessful unrelated claims, 5% for poor record keeping and 5% for unnecessary multiplication of the proceedings); *In re Ramp Corp. Sec.*

*Litig.*, No. 05 Civ. 6521(DLC), 2008 WL 58938, at *3 (S.D.N.Y. Jan. 3, 2008) (requested fee reduced from 25% of the common fund to approximately 15% where "the investment by counsel of time and labor in this case must be substantially discounted since less than half of that investment is properly attributable to any viable legal theory.").

When using the percentage method, it is recommended that courts apply a "lodestar crosscheck" in order to assess whether the fee awarded using the percentage method is either unconscionably high or low in comparison to the hours spent by Class Counsel. *Goldberger*, 209 F.3d at 50. When using lodestar as a cross-check, the hours documented need not be exhaustively scrutinized. *Id.* Using Class Counsel's figure of 3930.85 hours, the $700,000 fee award represents $178 per hour of legal services. In view of the fact that these services, while adequate, were neither remarkable for their efficiency or their work product, such compensation is well within a reasonable range.

### B. Expenses

 Fee awards include reasonable out-of-pocket expenses incurred by attorneys that are ordinarily charged to their clients. *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir.1998). Class Counsel additionally seeks reimbursement of $51,080.34 in expenses. All that has been provided as documentation for these expenses is a list showing four categories of expenses. (*Exhibit II* to the Fee Memorandum.) Three of the categories, "Court and service of process fees," "Transportation" and "Copying charges" come to $1145.95. Based on this modest figure, the Court is satisfied that the expenses in these categories were reasonable and approves these expenses. However, the fourth category, "Experts and outside

consultants," comes to $49,934.39. The only explanation of such fees provided in the Fee Memo was that "[t]hese expenses reflected the fact that this was a complex case." (Fee Mem. 42.) Without documentation and explanation, the Court has no basis upon which to conclude whether such fees were reasonable. Accordingly, this Court grants Class Counsel's motion for reimbursement of $1145.95 of out-of-pocket expenses and denies the balance of Class Counsel's fee request.

## C. Expense Award for Plaintiff Farinella

Class Counsel seeks an award of $2500 for plaintiff Farinella as compensation for the time he expended in his participation in the action and his out-of-pocket expenses. The Notice stated, "Class Counsel's Fee Application may also include an application on behalf of certain of the Representative Plaintiffs for reimbursement from the Settlement Fund of their actual out-of-pocket expenses (including lost wages) relating to the prosecution of the litigation." (Notice § 13.) Given the time and effort Farinella incurred in bringing this suit on behalf of the class members, the minimal amount of the award and the fact that the award was raised in the Notice and was not objected to, the Court approves it.

## III. Conclusion

For the foregoing reasons, the parties' joint motion for approval of the Settlement Agreement is GRANTED. Pawlak's motion to intervene is DENIED. Class Counsel's motion for fees and expenses if GRANTED in part and DENIED in part.

This order brings to a close a case of questionable merit that nonetheless consumed thousands of hours the attorneys' and the Court's time. Instead of going to those merits, the parties managed to wran-

gle on the periphery for some five years. After all of that time, it remains an open question who the beneficiaries of the action are and whether it was worthwhile.

SO ORDERED.